JAMES STAVOLA *v.* HOWARD S. PALMER ET AL., TRUSTEES OF THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, ET AL.

BROWN, JENNINGS, BALDWIN, INGLIS AND ALCORN, Js.

Argued March 9—decided May 23, 1950.

*Thomas J. O'Sullivan,* with whom, on the brief, was *Edwin H. Hall,* for the appellants (defendants).

*Samuel H. Platcow,* for the appellee (plaintiff).

INGLIS, J.   The plaintiff's employee was killed when he drove the plantiff's truck across a railroad grade crossing in Windsor.  The plaintiff, in the second count of his complaint, alleges that the death of his employee was caused by the negligence of the defendants.  He seeks to recover the workmen's compensation which he is obligated to pay to the dependents of the deceased. The appeal raises the questions whether the action is maintainable without citing in the personal representative of the deceased employee as a party, whether there was error in the charge and whether, upon the evidence, the deceased employee was guilty of contributory negligence as a matter of law.

The plaintiff's claims of proof are: On May 2, 1946, the plaintiff had his brother, Matthew Stavola, in his employ as a truck driver.  On that day Matthew was driving a truck in an easterly direction on Meadow

Road in Windsor. The driver's seat on the truck was inclosed in a cab. Meadow Road crossed the double tracks of the New York, New Haven and Hartford Railroad Company, of which the defendant trustees were the trustees in bankruptcy. As Matthew approached the railroad crossing he brought his truck to a stop about fifty or seventy-five feet to the west of it. He then shifted into first gear and drove onto the crossing. When he reached the easterly set of tracks the truck was struck by a train proceeding in a northerly direction, and as a result of the collision he was killed.

Meadow Road was an oiled surface road about twelve feet wide, and there was wooden planking between the rails of each set of tracks. In May, 1946, the volume of traffic on the road at the crossing consisted of approximately two hundred vehicles and pedestrians daily. There was no evidence that Meadow Road had been laid out as a highway by any public authority, but the plaintiff claimed that it was a highway. It served a large farm which lay on both sides of the tracks and included several structures and two dwellings to the east of the tracks; it also served another dwelling on the east side of the tracks and extended on to the Connecticut River.

The plaintiff claims that the collision was caused by the negligence of the employees of the railroad in that they operated the train at an excessive speed, failed to keep a proper lookout for traffic crossing the tracks at the place in question, although they should have known that the crossing was customarily used by large numbers of people, and did not blow the whistle or ring the bell on the engine when it was approaching and within eighty rods of the crossing. As regards the issue of contributory negligence, the plaintiff's claim is that the road crossed the tracks at such an angle that the right side and back of the cab of the truck which

Matthew was driving obstructed his view of the tracks upon which the train was approaching and that, therefore, his failure to see the train did not constitute negligence.

The defendants' claims of proof, in so far as material to the questions raised by the appeal, are as follows: To the east of the tracks Meadow Road led only into a private farm and through that farm to the Connecticut River. At the railroad crossing on the road were signs which read: "Warning, Private Crossing, R. R., Use At Your Risk." Meadow Road at the crossing was not a highway but a private way. There was nothing south of Meadow Road to prevent a person approaching the crossing from the west from seeing down the railroad tracks for approximately one thousand feet.

The trial court found that, on May 15, 1946, the compensation commissioner made a finding and award wherein the plaintiff and his insurer were ordered to pay to Molly L. Stavola, the decedent's widow, compensation at the rate of $30 per week commencing May 3, 1946, and continuing for not longer than the period of 312 weeks provided by law, subject to proper modification should she die or remarry before the expiration of that period. They were further ordered to pay a burial fee of $250. This award was made by reason of Matthew's death arising out of and in the course of his employment by the plaintiff. The total amount which the plaintiff and his insurer will have to pay under the award will not exceed $9610. The court also found that the widow is the duly appointed administratrix of Matthew Stavola's estate and that the plaintiff, upon bringing this action, notified her in writing by registered mail of its pendency, but she did not join as a party plaintiff.

The defendants contend that the plaintiff could not

maintain this action without making the administratrix of his deceased employee a party.  They laid the foundation for this contention by objecting to the admission of evidence tending to establish their liability to the administratrix and the amount of the damage to which she would have been entitled if she had been a party and by objecting to the charge, which was, in essence, that the plaintiff had the right to sue for the amount of workmen's compensation he was obligated to pay, but that his right to recover did not exist unless he proved the liability of the defendants for his employee's death, and that recovery was limited in amount to such sum as the administratrix could have recovered.  Although conceding that the statute which governs this action, now General Statutes, § 7425,[1] gives

[1] "LIABILITY OF THIRD PERSONS HOW ENFORCED AND APPORTIONED BETWEEN EMPLOYER AND EMPLOYEE.  When any injury for which compensation is payable under the provisions of this chapter shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of such injured employee against such other person, but such injured employee may proceed at law against such person to recover damages for such injury; and any employer having paid, or by award having become obligated to pay, compensation under the provisions of this chapter, may bring an action against such other person to recover any amount that he has paid or by award has become obligated to pay as compensation to such injured employee.  If either such employee or such employer shall bring such action against such third person, he shall forthwith notify the other, in writing, by personal presentation or by registered mail, of such fact and of the name of the court to which the writ is returnable, and such other may join as a party plaintiff in such action within thirty days after such notification, and, if such other shall fail to join as a party plaintiff, his right of action against such third person shall abate.  In the event that such employer and employee shall join as parties plaintiff in such action and any damages shall be recovered, such damages shall be so apportioned that the claim of the employer shall take precedence over that of the injured employee, and, if the damages shall not be sufficient, or shall be only sufficient

the plaintiff a substantive right, the defendants say it makes no provision as to how that right is to be enforced. They argue that the confusion bound to result in the minds of a jury by the admission of the evidence and the charge complained of would not arise in an action in which the only question to be passed upon by the jury is the liability to the administratrix and where it is left to the court to apportion the damages awarded by the jury between the administratrix and the compensation payer. It follows, they contend, that the legislature could not have intended, at least in a case in which the basis of the action is a claimed wrongful death, that the employer could sue the tort feasor for compensation which he is obligated to pay without joining the administrator of the deceased employee so that the case could go to the jury on the single question of the amount of the liability of the tort feasor to the administrator.

We have held that § 7425 is to be so interpreted that wherever the word employee is used therein it is intended to include the personal representative of a

to reimburse him for the compensation which he has paid, or by award has become obligated to pay, with a reasonable allowance for an attorney's fee to be fixed by the court and his costs, such damages shall be assessed in his favor; but, if the damages shall be more than sufficient to reimburse him, damages shall be assessed in his favor sufficient to reimburse him for the money he has paid, with a reasonable allowance for an attorney's fee to be fixed by the court and his costs, and the excess shall be assessed in favor of the injured employee. Such allowance for an attorney's fee shall include services rendered before the compensation commissioner, and in no case shall be less than the sum of twenty-five dollars. No compromise with such third person by either employer or employee shall be binding upon or affect the rights of the other, unless assented to by him. The word 'compensation,' as used in this section, shall be construed to include not only incapacity payments to an injured employee and payments to the dependents of a deceased employee, but also sums paid out for surgical, medical and hospital services to an injured employee and the three hundred fifty dollar burial fee provided by law."

deceased employee. *Uva* v. *Alonzy,* 116 Conn. 91, 98, 163 A. 612. Accordingly, such rights as are given by the statute to an employer are his irrespective of whether the liability of the tort feasor is to an injured employee personally or to his personal representative. The statute gives to an employer the substantive right to reimbursement of the workmen's compensation which he has become obligated to pay. On occasion we have referred to that right as in effect one of subrogation to the right of the injured employee to recover for the tort committed against him. *Mickel* v. *New England Coal & Coke Co.,* 132 Conn. 671, 680, 47 A. 2d 187. In a case of wrongful death that description of the right is not technically accurate. If the right of a compensation payer to recover from a third party tort feasor rests upon principles of subrogation at all, it is upon the theory that he has satisfied an obligation to his employee which was primarily the obligation of the tort feasor. Where, however, an employee dies as the result of injuries arising out of and in the course of his employment, the workmen's compensation is paid to the dependents of the deceased. It is not those dependents who have the cause of action against the third party tort feasor. It is the administrator of the decedent who has that cause of action. Technically, therefore, the making of the payment to the decedent's dependents could not subrogate the employer to the cause of action which the decedent's administrator has. More accurately, the right which the statute gives to the employer is, as we also said in the *Mickel* case at page 679, a derivative right. The theory of the statute is that by causing the death of the employee the tort feasor injured the employer to the extent that he has to pay compensation. The situation is analogous to that of a husband injured by reason of an injury to his wife caused by a tort feasor. The husband

has a right to recover the expense which has been imposed upon him for his wife's medical expenses, but his right is derived from his wife's right of action. The employer has the right to recover for the injury done him by the tort feasor who caused the death of his employee. His right is derived from the employee's right, which survived to his personal representative. For that reason, the right of the employer depends upon the employee's right to the extent that he has no cause of action unless the employee or his representative has a cause of action, and he cannot recover any more than the employee himself or his representative could recover. Subject to those limitations, the right which the employer is given by the statute is his. It is not the right of the employee or his personal representative.

The statute provides: "No compromise with such third person by either employer or employee shall be binding upon or affect the rights of the other, unless assented to by him." It also provides that, if either the employer or the employee fails to join in an action instituted by the other against a tort feasor within thirty days after notification by that other, his cause of action is barred. These provisions clearly indicate that under the statute the employer and the employee each has a right of action which is separate from that of the other.

The fact that one person's right of action is derived from another's does not require that that other be joined as a party in the action brought by the first to enforce his derivative right. See *Comstock* v. *Connecticut Ry. & Lighting Co.,* 77 Conn. 65, 58 A. 465; 41 C. J. S. 891. In the present case, the right of reimbursement which the employer has, although derived from the right of the employee, is a separate right vested in him by the statute. There is no reason to be-

lieve, therefore, that the statute, in providing that either the employee or the employer may institute an action in his own name, means anything more than it says. It is clear that it does not require an employer starting such an action to join the employee or the employee's personal representative as a party. The mere fact that the trial of the case may be complicated because the employer must prove not only the liability of the defendant as a tort feasor but also the amount of the damage sustained by the employee, as a limit to the amount which the employer may recover, does not alter the situation. If a person claims a right of action, he is entitled to have that right determined no matter how involved the trial of the case may be.

In this case, the trial court in the absence of the jury determined the amount of workmen's compensation the plaintiff was obligated to pay. It then instructed the jury what that amount was and told them that if their verdict was for the plaintiff it should be either for that amount or the amount of damage the employee's administratrix would have been entitled to recover, whichever amount was the lesser. This procedure was correct. Ordinarily, when both the employee and the employer are parties plaintiff, the jury should not be told the amount of the employer's obligation for workmen's compensation. The jury returns a verdict for the amount of damages to which they find the employee is entitled, and thereafter the court apportions that to the employer and the employee. *Mickel* v. *New England Coal & Coke Co.*, supra, 681. In a case like that at bar, however, where the damages may not exceed the amount of workmen's compensation and neither the employee nor his representative is a plaintiff, it is essential that the jury should be told what the amount of the workmen's compensation is.

The provisions of the judgment entered upon the

second count in this case call for some discussion. Upon the verdict for the plaintiff in the amount of $9492, the court adjudged that the plaintiff recover forthwith $4510, the amount he had paid by way of workmen's compensation prior to the date of trial, "and the sum of Thirty Dollars per week damages for the period commencing January 20, 1949 and continuing each week thereafter so long as the plaintiff shall be obliged to continue to pay said sum of Thirty Dollars per week by virtue of the aforesaid finding and award . . . made by the Workmen's Compensation Commissioner . . . provided that the total of said sum of Four Thousand Five Hundred Ten Dollars damages and said weekly payments shall not exceed the total sum of Nine Thousand Four Hundred Ninety-Two Dollars damages."

In cases in which both the employee and the employer were parties plaintiff and the damages awarded were in excess of the workmen's compensation which the employer was obligated to pay, we have approved a procedure whereby the judgment directs the reimbursement of the employer for such workmen's compensation as he had paid to the date of the trial and the payment of the balance of the amount of the verdict to the employee, with the proviso that then the employer is discharged from all future liability to pay compensation. *Bombanello* v. *Throm*, 104 Conn. 504, 506, 133 A. 577; *Rosenbaum* v. *Hartford News Co.*, 92 Conn. 398, 401, 103 A. 120. Such a procedure is not appropriate where neither the employee nor his personal representative is a party or where the amount of damages awarded does not exceed the total amount of workmen's compensation which the employer is obligated to pay. If the employee is not a party to the action, the court had no power to diminish the rights he has received under the award of workmen's compen-

sation by terminating the obligation of the employer to the employee. If the damages awarded are not in excess of the compensation paid or to be paid under the award, whether the employee is a party or not, it would not be in accord with the provisions of § 7425 to limit his compensation to the amount of damages awarded. In the present case, it clearly is not proper to terminate the employer's obligation to pay compensation at the time of the judgment. On the other hand, he is not entitled to recover from the defendants any more than he has paid and will actually have to pay in the future. The amount which he will have to pay in the future is unascertainable because it depends upon the continuance and degree of dependency of the dependent of the deceased employee. Accordingly, the form which the judgment took in this case was the only one appropriate to meet the exigencies of the situation.

One of the particulars of negligence specified in the complaint was that the operator of the train failed to give any signal as it approached the grade crossing. Section 5530 of the General Statutes provides that "each person controlling the motion of an engine on a railroad shall commence sounding the bell or whistle when such engine is approaching and is within eighty rods of the place where such railroad crosses any highway at grade and shall keep such bell or whistle occasionally sounding until such engine shall have crossed such highway." The plaintiff's claim of proof was that no signal had been given as the train approached the Meadow Road crossing. There were claims of proof from which the jury might have found that Meadow Road was a public highway by dedication and other claims of proof from which they could have determined that it was a private way. The plaintiff's position was that, even though his proof that it was a public highway failed, the statute applied because the word

"highway" as used therein includes private ways. This situation called for instruction to the jury as to what was meant by the word "highway" in the statute.

On this subject the defendants requested the court to charge that "Meadow Road crossing is a private crossing" and that "Railroads are not obliged to ring the bell or blow the whistle on the engine of trains approaching a private crossing." Neither of these requests is an accurate statement. The court could not properly have charged that the crossing was a private crossing because there had been evidence to the contrary. Nor should it have charged that there is no obligation under any circumstance to give a signal when approaching a private crossing because, aside from the statute, the exercise of reasonable care as required by common law might call for the giving of a signal under some circumstances. *Pratt, Read & Co.* v. *New York, N. H. & H. R. Co.,* 102 Conn. 735, 750, 130 A. 102; *Ulrich* v. *New York, N. H. & H. R. Co.,* 98 Conn. 567, 568, 119 A. 890; *Pomponio* v. *New York, N. H. & H. R. Co.,* 66 Conn. 528, 541, 34 A. 491.

Instead of charging as requested, the court in the charge made no reference to the question of fact whether Meadow Road was a public highway or a private way but told the jury in effect that the statute applied to the case and required the defendants' engineer to give a signal either by blowing the whistle or sounding the bell while the train was traversing the eighty rods before it reached the crossing. No exception was taken to this part of the charge as given. The written requests, however, put the court on notice that the defendants were requesting a charge to the effect that the statute did not apply in the case of a private crossing. Under the circumstances, there was sufficient compliance with the spirit of Practice Book, § 156, to warrant us in considering the propriety of the

charge as given. See *Mickel* v. *New England Coal & Coke Co.*, 132 Conn. 671, 674, 47 A. 2d 187.

The gist of the charge is that Meadow Road was a highway as that term is used in the statute. Inasmuch as there was conflicting evidence in the case as to whether it was a public highway or a private way, it must be assumed that, in charging as it did, the court intended to interpret the word "highway" in the statute as applying to both public highways and private ways. Webster's New International Dictionary (2d Ed.) defines a highway as "A main road or thoroughfare; hence, a road or way open to the use of the public." We said in *Laufer* v. *Bridgeport Traction Co.*, 68 Conn. 475, 488, 37 A. 379: "A highway is a public way open and free to any one who has occasion to pass along it on foot or with any kind of vehicle. In every highway the King and his subjects may pass and repass at pleasure." The essential feature of a highway is that it is a way over which the public at large has the right to pass. See *Yale University* v. *New Haven*, 104 Conn. 610, 616, 134 A. 268; *Newton* v. *New York, N. H. & H. R. Co.*, 72 Conn. 420, 426, 44 A. 813; *Peck* v. *Smith*, 1 Conn. 103, 132. Accordingly, the term "highway" is ordinarily used in contradistinction to a private way, over which only a limited number of persons have the right to pass.

There is no reason to believe that it is used in § 5530 in any other sense than the usual one of a public way. In other sections of the statutes relating to the obligation of railroad companies at grade crossings, the terms "highway" and "public highway" are used interchangeably. General Statutes §§ 5537, 5540, 5541, 5542, 5543, 5545. It is quite apparent that it was the intention of the legislature to impose on railroads the various duties with reference to grade crossings which it does impose only where those crossings are over public ways and

not where they are over private ways. If there were imposed on a railroad such duties with reference to crossings over private ways, it would be difficult if not impossible to know where to draw the line because of the wide variety of private ways. The term "highways" as used in similar statutes in other states has been interpreted as meaning public ways and not private ways. *Illinois Central R. Co.* v. *Bennett,* 296 F. 436, 438; *Matter of New York Central & H. R. R. Co.,* 200 N. Y. 121, 123, 93 N. E. 515. As is said in *Detroit International Bridge Co.* v. *American Seed Co.,* 249 Mich. 289, 295, 228 N. W. 791, "The expression 'private highway' is a misnomer and 'public highway' is tautology."

The trial court should have instructed the jury that the statute in question applied only to grade crossings over highways which were public ways and that it was for them to determine as a question of fact whether Meadow Road was a public or private road. It was error to charge, as it did in essence, that the statute applied to compel the defendants here to sound a signal for eighty rods before the train reached the Meadow Road crossing. Such an error requires a new trial.

Inasmuch as the case must be retried, it would serve no useful purpose to pass upon the question whether the evidence on the former trial compelled a conclusion that the plaintiff's employee had been guilty of contributory negligence. Nor is it necessary to consider the other assignments of error.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.